And whenever you're ready, Counsel. Thank you, Your Honors. May it please the Court. My name is Adam Unikowski, and I'm here on behalf of the plaintiff, Twenty-Nine Palms Band of Mission Indians. ATF's decision to place Twenty-Nine Palms on the PACT Act noncompliant list was contrary to law. ATF's decision hinged on its determination that Twenty-Nine Palms Native Nation customers were acting unlawfully which in light reflected ATF's determination that those customers were required to obtain licenses. That decision was incorrect because under federal Indian law, the Native Nation customers were not required to obtain licenses because those licensing requirements are preempted. Under, yes, Your Honor, sorry. Federal Indian law provides that a state generally cannot exercise regulatory authority over Native Americans on-reservation operations unless a federal statute explicitly authorizes that exercise of authority. I thought the problem here was basically the sale of non-tax cigarettes to non-Indian customers which may be occurring on the reservation. So is your position that the state has no authority to regulate those sales? Your Honor, in many cases under BRACA, the state is permitted to impose a tax on a non-Indian who buys cigarettes on an Indian reservation. The problem here is we've got a tribe of, what, 15 members and they're dealing in millions of cigarettes. I mean, they can't be puffing them 24 hours a day, seven days a week. So they're clearly making sales to non-tribal members based simply on the volume of cigarettes that we're talking about here. So we're a wholesaler. We sell to Native Nations and those are the retailers and they in turn sell to... But the statute says that if the wholesaler that you're distributing to is subject to regulation because they are distributing to non-Indian customers, then they become customers under the statute, therefore requiring licensing from the state of California. Isn't that the regulatory scheme? Yeah, so the question under the regulatory scheme is whether the Native Nation customers are acting unlawfully. So the Native Nation customers are all retailers operating on reservations. They're tribal retailers operating businesses on their own reservations. So the question is whether the state of California can require those on-reservation retailers to obtain licenses as a condition of operating those on... But haven't we already resolved that issue in existing Ninth Circuit authority? No, we're not aware of any court in this jurisdiction or any other that's ever held that a state can require an on-reservation tribal business to obtain a license. So we would have to expand our decision in Big Sandy to clarify the law in this area. Is that right? Yes, I think that a decision in ATF's favor here would be a significant expansion of Big Sandy because Big Sandy quite explicitly rests on the fact that Big Sandy was venturing off its reservation and a different legal framework applies when a tribal business is leaving its reservation to do business. But there are sales that are being made to other reservations in California and we have said that those sales are not sales that are being made on the reservation of the particular tribe at issue. They're sales outside of quote-unquote Indian country. Absolutely, Your Honor. That is the holding of Big Sandy. That's absolutely correct. But in this case... If those sales can be regulated, why should the next logical step not be the regulation of the sales of untaxed cigarettes to non-Indian customers even though they happen to be made at a tribal smoke shop on the 29 Palms Reservation? Well, because the Supreme Court's decisions have sharply distinguished between state regulation of off-reservation and on-reservation operations. If it involves members of your tribe, I would agree with you. But I don't think the Supreme Court has said you can't regulate transactions with non-tribal members on the reservation. So the Supreme Court has said that any state regulation of the tribe itself on its reservation can't be regulated, subject to this exception in the Moe case I'll talk about in a moment. It's true that under the Brackner case, the Supreme Court has held that when the state wants to regulate what a non-Indian does while on a reservation, that's subject to this balancing test of federal, state, and tribal interests. Which is the purchase of untaxed cigarettes. Right. But here, the question is not whether the state of California may require the non-Indians to pay taxes. The question is whether it may force the tribal business to obtain a license as a precondition of conducting its own on-reservation. So does your client have no objection to charging and collecting the tax and remitting it to the state? If there was a way to do that without the licensing scheme, we'd have no objection. So many states have schemes where the on-reservation retailers don't have to get licenses, but they still are subject to collect and remit requirements. The Supreme Court has upheld those schemes, and we're fine with that. In cases such as the Moe case, the wellspring of this entire line of cases, the federal district court in that case invalidated Montana's licensing requirement, and that was not appealed. But the Supreme Court ultimately held that in the absence of that licensing requirement, the state may impose the requirement to collect and transmit the tax. We quote another case from the Oklahoma Supreme Court, which is virtually identical to that. The court says that it's perfectly fine for the state to direct the tribe to collect and remit the tax dollars. What's the current status on the ground here at 29 Palms? Are they continuing to sell retail? No. We're on the PAC-TAC non-compliant list, which means common carriers.  Correct. Common carriers cannot carry it, so no. And before that happened, how did the tribe's customers place their orders? How did they place them? Online, over the phone, through the mail? I think it was mostly online. I'm not sure the record has information of whether it was over the phone. I mean, we have a lot of different customers. We have something like 40 different customers. There's a listing of them in the joint appendix pages, ER 66 to 67. Which looks to me to be a lot of other tribes in California. Exclusively. We solely sell to other tribes, which operate businesses on their own reservations. But doesn't 29 Palms have retail, or at least retail sales through its casino? Yes. So 29 Palms has its own retail business, which I'm including in the list of tribes operating on-reservation businesses. So it does operate at least one retail business selling to non-tribal members on the reservation? Yes. 29 Palms has such a business, and it also sells to other tribal businesses. But the stakes change when the state is regulating off-reservation versus on-reservation transactions. I mean, the Moe case requires that the burden be genuinely minimal. And the burden in this case of licensing is both unprecedented and significantly greater than the types of burdens. But the licensing, as I understand it, requires filling out an application and paying a fee. The burden really is the assessment of the tax, the excise tax. I assume it's, what, $2.45 a carton or something, as I read the record. So there's three aspects of the licensing requirement that we take issue with, which go well beyond, from our perspective, the mere collection and transmission of tax. One is just the fact that you need a license at all as a precondition to operating. But other than filling out an application and writing a check for, I don't know what the licensing fee is, let's assume it's $1,000. Other than writing that, how burdensome is it? Well, okay, I mean, I don't want to trivialize those two burdens, but I can jump to the third point I was going to make, which is the fact that the tribe has to subject itself to mandatory inspections. I think there's a significant sovereignty issue there. Well, if your client doesn't have any problem collecting and remitting the excise tax, doesn't the state have a right to audit the records to make sure that they're collecting all the tax on all the cigarette sales to non-tribal members? First of all, of course, it's not just our clients. It's all of our Native Nation customers that are at issue in this case. But if I disagree with your assessment and conclude that the sales to other tribes is not a sale in Indian country vis-a-vis 29 Paul, then those are prohibited sales under the regulatory system. No, that's not correct, Your Honor. Under the PACT Act, the premise of this decision was that the tribe is a delivery seller. And that rested on the determination that the buyers are consumers. And that can only be true if the buyers are acting unlawfully, not us. But my suggestion is it seems to me the regulatory scheme, and I think our case law says, that if they are selling cigarettes to another tribe, and that tribe is selling the cigarettes to non-tribal members, then they become a customer within the meaning of the regulations. And therefore, 29 Palms can't sell to another Indian tribe if that tribe is a customer. In a sense, that's a question. The question is whether the, under the relevant regulations, the Native Nation customers are consumers only if they're acting unlawfully. So I think both sides agree in this case that ATF's decision hinge on the determination that the on-reservation retailers were violating California law for not getting licenses. So even if the court thinks, I mean, we don't agree, but even if the court thinks that 29 Palms was doing something wrong, that's not enough to uphold ATF's decision. The court has to also find that the on-reservation retailers were required to obtain licenses with all that entails as a precondition to operating their own tribal businesses. Or for sales of untaxed cigarettes to non-Indian tribal members on the reservation. Yes, and we would have no problem with the state requiring, under numerous different mechanisms, the tribes to collect those taxes and transmit them to the extent BRACA didn't preempt the tax. There's a Supreme Court case called... So is there any other burden that you're complaining about? We've got the licensing. We've got the sales to other distributors. Was there a third problem? Yes, so the burdens we're talking about, Your Honor, are the burdens that affect the on-reservation retailer, not the burdens on 29 Palms. Okay, those are the burdens that we're talking about. Because what we're arguing in this case primarily is that the state cannot require on-reservation retailers to obtain licenses as a precondition to operating their businesses. So I want to just state... And that's because they don't want to be subject to inspections, audits, and reporting. No, well, first of all, I think it's a significant infringement on Indian sovereignty to require a tribe to obtain a license as a precondition to operating a business on its own sovereign territory that's never been blessed by the Supreme Court, except in the Rice case involving alcohol, which is the exception that proves the rule, because there's a federal statute explicitly authorizing states to impose licensing requirements. Well, the PACT Act itself is a federal statute, is it not? Yes, but the PACT Act explicitly provides that it was not intended to expand state regulatory authority over Indian reservations. It's completely opposite to the federal regime governing alcohol sales. So your position is under the PACT Act that the state is powerless to regulate the conduct of 29 Palms on its reservation, regardless of who's buying their cigarettes? That is emphatically not our position, Your Honor. The state has numerous mechanisms, just not this one. Virtually every state has managed to find a way to collect these taxes without imposing licensing requirements on on-reservation businesses. The Pottawatomie case, for example, from the Supreme Court identifies lots of ways that states can collect every single tax dollar in full compliance with federal Indian law. California is unique in requiring this licensing requirement of on-reservation retailers. So California won't mediate or agree to do that? That was going to be my question, actually, because what I'm hearing is that the problem here is the mechanism, not the idea, I guess is what I'm saying. That's exactly right, Your Honor. The problem is the mechanism. Most states don't have, in fact, I don't think any other state has this type of rule, like California. And in terms of working with California, California withdrew its nomination of 29 Palms to the PAC-DAC noncompliance list, and yet the ATF proceeded forward. So that's what I'm wondering is that, this is a little bit outside of the briefing here, but I don't know if you're willing to, if you're authorized to even talk about this, but it seems to me you have, in this case, very good counsel. You have three different sovereigns. And it seems to me this case should be resolved around a table with a mediator, rather than in this context, candidly. I mean, you know, if we got to make the call, we got to make the call. But it seems like with the counsel we have here and the money involved, something could be worked out. I'm curious if you're authorized to talk about whether if we instructed you guys to go to mediation, whether you think that would be fruitful. I'd like to check with our client first, but I'm confident about that, because we had government-to-government negotiations with California after we were nominated. So what happened was California nominated us. We didn't find out about that until a little bit later. And then California had some concerns about the fact that we weren't submitting PAC-DAC reports to the state. We worked with them, and then we started submitting them. And then California withdrew the nomination, and that ATF nonetheless proceeded forward. So, you know, we're always happy to work with California and potentially with other tribes to try to achieve a reasonable solution. I mean, obviously, we think there's a federal preemption problem here, but, I mean, I'll get back to the court. But, I mean, the tribe is always open to reasonable government-to-government negotiations with the fellow sovereigns who have a stake in this issue. Do you want to reserve? Yeah, I'll reserve the meeting of my time. And we were a hot bench, so we'll give you three minutes. Thank you. Good morning. May it please the Court, Laura Myron for ATF. I'd like to make three points that I think might help to clarify some confusion. The first, with respect to 29 Palms' liability under the statute and its relation to the licensing of on-reservation retailers. The second, with respect to the application of Big Sandy as it relates to this case. And the third, I'd like to address the bonding and licensing requirements that counsel referenced at the podium. So if I could start with the liability question. I think this is important. 29 Palms' liability under the PACT Act turns only on its own violations of California state law, its own failure to have a license as a distributor, its own sales of millions of cigarettes to various customers without paying the excise tax. 29 Palms is effectively raising at a jurisdictional defense to ATF's application of the statute that their sales are not the kind of sales, not delivery sales within the meaning of the statute. And the reason that they're pointing to that, and they're basically asking this Court to hold that notwithstanding the fact that the on-reservation retailers are not licensed and are not paying the taxes, that they are nonetheless operating lawfully and therefore the sales are outside of ATF's enforcement reach. That would require this Court to conclude that it would be an infringement of tribal sovereignty for the on-reservation retailers to be required to get a license and to pay the excise taxes. But 29 Palms' own liability under the statute does not turn on the status of its online retailers. That's effectively an argument that the reach of the statute wouldn't reach those kinds of sales. And I think that leads to Big Sandy, which is this Court's sort of closest precedent. The factual setup of Big Sandy is materially identical to the factual setup you have before you. A tribal retailer making sales to other tribes operating on-reservation cigarette sales through smoke shops and other things to the general public, to non-tribal members. And the question before the Court in that case was whether the very same licensing, record-keeping, and excise tax scheme that is before you today could lawfully be applied to the distributor. And this Court said yes. And in doing so, it made two, I think, important points. The first is the Court said, and this is on page 725 and 726 of the opinion, that the test for application of state regulatory burdens to on-reservation conduct is whether or not it's a minimal burden using the test derived from cases like Moe and Milhelm and those cases. The Court then said that the very licensing scheme that you have before you today as applied to distributors was the kind of minimal burden that could facilitate the collection of a concededly lawful excise tax. And so it is true that Big Sandy doesn't directly answer the question before you today whether that licensing scheme as applied to an on-reservation retailer would be a minimal burden. But I think that if you read Big Sandy, it gives you guidance that says, one, the test is minimal burden, and two, this licensing scheme is the kind of minimal burden that facilitates the collection of a valid excise tax. I would... Can you answer my question that your opposing counsel didn't have an answer for, and that was, what did the ATF investigation show in terms of how orders were placed, for example? There has been no dispute that these are remote orders. I don't know whether they're made by phone or online. Remote order, what does that mean? Not an in-person sale, so not someone going into a cigarette retailer and buying a pack of cigarettes. I mean, this is a distribution scheme, so these are significant sales. 29 Palms is importing millions of cigarettes from New York and selling them to the, I think, 40-plus retailers, as noted. So they're being made in some sort of an electronic form, whether it's online or through email or telephone? Yes, so Section 376A of the PACT Act, which is the sort of kinds of sales that bring you within the realm of ATF's enforcement authority, require, one, that it be a remote sale, and, two, that it be to a consumer. And this is on A1 of our appendix. And there's no dispute that they satisfy the remote sales component of that jurisdictional requirement. The question in this case, and the argument they're making, is that ATF doesn't have enforcement authority over these sales because they are retailers that are lawfully operating in the state of California. And so they are asking you to hold that imposing the licensing, record-keeping, and excise tax requirements on those retailers would be an infringement of tribal sovereignty. And they have to be correct that they are nonetheless operating lawfully, notwithstanding the fact that the record establishes that they don't have the requisite licenses and they haven't paid the tax. And they would have to do that for all of the retailers that are included in the administrative record demonstrating that 29 Palms is making the kind of sales that brings them within the reach of ATF's enforcement authority. And when you say making the kind of sales, you mean sale of untaxed cigarettes to non-Indian consumers. I mean delivery sales of cigarettes, which is a sale of cigarettes or tobacco products that is conducted remotely and that is not to a lawfully operating retailer. If those two conditions are met, then ATF has enforcement authority where that defendant is not paying the excise taxes, is not complying with licensing requirements, and it has the authority to place them on the non-compliant list until they come into compliance with state tobacco laws. And so there are sort of two questions with respect to ATF's enforcement authority. The first is whether it is the kind of sales that bring you within the reach of ATF's authority. And the second is whether you are complying with state law or otherwise in violation of state law, which would give ATF authority to put you on the non-compliant list. They have not contested the second part of that. They have not contested that they are not in compliance with California state law. And in Big Sandy, this court held that those licensing, record keeping, and excise tax requirements can lawfully be applied to a distributor in the same position as 29 Palms. So I don't think there is a valid argument that it would be lawful for them to nonetheless make these sales. Well, their argument is sovereignty, right? You don't have the authority to regulate what we do on our reservation. Their argument is that they're making sales to lawfully operating retailers because the state does not have the authority to regulate the retailers in the way that it does the distributors, which this court blessed in 29 Palms. So they're effectively saying that because the retailers operate on the reservation, that that shifts the calculus, shifts the burden such that the test this court applied in 29 Palms would come, excuse me, in Big Sandy, would come out differently with respect to on-reservation retailers. But I would point the court to this, excuse me, to the Supreme Court's decision in Milhelm, in which the Supreme Court said that states have a valid interest in collecting cigarette taxes on reservations and that there is more room for state regulation in that area. I would also point the court to Colville, in which the Supreme Court held that reasonable regulatory burdens. This is actually Colville. Thank you, Your Honor, Colville. I'll give you the Northwest perspective on it. Thank you, I appreciate it. Not a Kansas City where I'm from that I'm familiar with. I'm the red butcher of the Kansas City. But in that case, what the Supreme Court said is that states may apply reasonable regulatory burdens to collect cigarette taxes. This is a concededly valid tax and the licensing requirement is, as this court found in Big Sandy, the kind of minimal burden that facilitates its collection. And then I would like to address, very briefly if I could, the specific requirements of the licensing scheme, particularly the bonding and inspection requirements and the fee. California does not require tribal retailers or distributors to pay the fee. There was a case in Moe in which the court found that that particular fee would infringe on tribal sovereignty. But it does require them to get a license. And that licensing requirement, and I think this is also important, does not come with the inspection and bonding requirements that plaintiffs have suggested that it comes with. The bonding requirements in the state licensing scheme apply only to importers who have a regular or retailer license which doesn't have bonding requirements. And the inspection requirements, which are in California State Law 22980, are not contingent on your status as a licensee. The state, in that provision, authorizes its agents to inspect any facility where cigarettes are being sold or where they suspect cigarettes are being sold in violation of California State Law. Applying for a license does not require the applicant to consent to inspection in any way. And whether or not those inspection requirements would otherwise infringe on tribal sovereignty isn't part of this case because what is at issue in this case is the failure of the on-reservation retailers to have a license which doesn't sort of bring with it the inspection requirements that are pointed to. And this is in California's amicus brief. They have explained that there is an overall tobacco taxing and licensing scheme that isn't contingent on the license application. If the court has... Well, let me ask the question I ask opposing counsel again. Very good counsel in this case. A lot of money at stake. Three separate sovereigns. What are your thoughts about us sending you to one of our mediators and trying to work this case out instead of us working it out? I mean, they're kind of looming over this. I frankly haven't spoken with them about their interests. I mean, I will say 29 Palms is not complying with California state law and they haven't contested that they're not complying with California state law. Their argument is that they don't have to because the online retailers cannot be asked to get a license, the exact license that this court blessed in Big Sandy. And so we're always happy to participate in mediation, but I don't think this is a particularly hard legal question before the court and we would ask you to apply the test that you applied in Big Sandy and reach the conclusion that is effectively noted throughout the decision that this is the kind of minimal burden on reservation retailers who are also not a party to this case. And the reason, I think that sort of brings me back to my original point, which is the reason that this is relevant is because 29 Palms is effectively asserting an affirmative defense. And so in order for them to prevail before this court, they have to be right that all of the on-reservation retailers to whom they're selling cigarettes are lawfully operating, notwithstanding the fact that they're not licensed, notwithstanding the fact that they're not paying excise taxes, notwithstanding the fact that they're buying cigarettes from an unlicensed distributor, which is also a violation of California's licensing provisions. And they have to be correct across the board in order for them to be right that ATF does not have the authority to bring this enforcement action against them. Am I correct in assuming, I saw the list that counsel referred to of the wholesale customers. Would the state take the position, I assume it would, that all of those distributors, other tribes throughout California also must be licensed? I can't speak to the state's position. I mean, what I can say is that the state confirmed as part of the affirmative record that the vast majority of 29 Palms's customers are not licensed or don't have the kind of license that they would need to make the untaxed, to sell cigarettes without the stamps. I don't, I can't speak to sort of the... That has to be true because of the size of the tribe and the volume of cigarettes that we're talking about here. I mean, they're going somewhere, but they're clearly not being sold at the 29 Palms casino. Yes, I think that's right. I mean, I think that as it's presented to you in this case, 29 Palms has the burden of proving that all of their sales are to lawfully operating retailers, and they haven't done that on the record before you. I don't think the record would support sort of the... I just thought in the record, whether... What prompted my question, and I'm not trying to undermine Judge Owen's request because I think mediation might be fruitful if you want to pursue it, but it just strikes me that because of the fact that all these other tribes are not parties to this litigation, this is going to set a precedent as to one tribe in California, even if it's successfully resolved through mediation, and what do we do with all the other tribes that are doing exactly the same thing? I think if you're concerned about the breadth of the holding and the application to other tribal on-reservation retailers, that the easiest way to resolve this case, perhaps the narrowest way to resolve this case, is to hold that they have not established that the on-reservation retailers are lawfully operating because the record demonstrates that they don't have a license and they haven't provided a reason to conclude that they are otherwise lawfully operating. They haven't... I mentioned this in passing, but they're also engaging in sales with an unlicensed distributor, which would be unlawful under California state law. They're not paying the requisite excise taxes, which would be unlawful under California state law. And so I do think that the way that this has come up does present the question of whether they need a license, but the sort of easiest way to resolve this case is to conclude that they have not demonstrated that they are otherwise operating lawfully and would therefore be outside the reach of the PACT Act and ATF's enforcement authority. Are some of those other customers listed under the PACT Act? No, they're not at the moment, as far as I know. I mean, I don't... I can't speak to, you know, what their business model is, but I would suspect that they are because they're mostly retail shops, engaging in sales to consumers, bringing them outside the reach of ATF's enforcement authority. I don't know how many Indian tribes there are in California, but there are a lot. Yeah, and I think the point about the sales to consumers being outside the reach of ATF's enforcement authority is important. I mean, that most of the retailers, assuming they're selling to consumers as opposed to other retailers or distributors or manufacturers, would be out... Those would not be delivery sales within the meaning of the statute, and they would not be subject to ATF's enforcement authority. Thank you, counsel. Thank you. Three minutes. Thank you, Your Honors. I'd like to begin with counsel's suggestion that we're violating the statute and merely asserting some kind of jurisdictional or affirmative defense. There's a few words used for that. That's not the case. The PACT Act is a statute that authorizes the federal government to take actions against delivery sellers, and so the government has to show that it's acting within its jurisdiction. And if we're not a delivery seller because we don't satisfy the statutory decision, then we should prevail in this case. It's true that counsel made arguments that we're violating state law, but that's a separate issue, and the Big Sandy case was an issue of state law. It was an action between the state of California and the tribe. This is a PACT Act case, and so the government has to show that the requirements for PACT Act liability are satisfied, and that includes a showing that the on-reservation retailers are acting unlawfully. Now, it's true that... If we agree that the sales are unlawful activity under state law and must be regulated or must comply with state regulations, then would you agree that the decision would not be arbitrary and capricious under the APA to list 29 palms on the PACT Act prohibited seller list? We have a couple of alternative arguments, but it is the case that our primary argument is that 29... Excuse me, the Native Nation customers are not acting unlawfully because ATF concluded... I understand that, but I'm just... Just in terms of the arbitrary and capricious analysis, it is an APA challenge to the listing, is it not?  That's the heart of the case. That's correct. So if the agency... If we agree that the agency could reasonably conclude that these were unlawful sales to unlicensed distributors making them customers and they got this lengthy letter explaining why ATF believed that, then it would be difficult to conclude that the agency's decision to include them on the list was arbitrary and capricious under the APA. I mean, if we lose on all of the legal arguments we're presenting to the court, then we're going to lose the case. But, I mean, I don't... We have several different alternative legal arguments in the case as to why ATF made errors of law. So, no, I don't think... I mean, we also have a separate argument, for example, that the discussion of Bracker was incomplete or really nonexistent as to the retailers' on-reservation activities. So it's true our lead argument concerns the licensing status of on-reservation retailers, but we have a number of backup arguments as well. So I'd just like to leave the court with one word about the licensing requirement. It's true that there's a lot of different customers here, but every single one of our customers is an on-reservation tribal retailer. So if the court thinks that the state cannot require on-reservation retailers to obtain licenses as a precondition to operating their businesses, then that would necessarily establish that all of our customers are not acting unlawfully because every single one of our customers is an on-reservation retailer. And that's what we've been arguing from the start of the case. If the panel has no further questions, my time is up. All right, thank you very much, Counsel. Thanks to both of you for traveling from Washington, D.C. to be here. Probably didn't think El Centro was going to be on your travel schedule this year, so we appreciate the efforts you made. That's our last case for the day. It's submitted, and we are going to go back and conference. Law clerks will talk to the students, and we are adjourned. But again, thank you to everyone who made this possible. Appreciate it. All right. Thank you.
judges: TALLMAN, OWENS, Montenegro